UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH A. PACELLA

        Plaintiff,                  Case No.
                                                Hon.

vs.

BIOSENSE WEBSTER, INC.
 a California corporation,

        Defendant.
_____/

Carol A. Laughbaum (P41711)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff, Joseph A. Pacella, by his attorneys Sterling Attorneys at Law, P.C., for his Complaint against Defendant, submits the following:

## JURISDICTION AND PARTIES

1. This is an action for sexual and religious harassment and discrimination, and retaliation in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* arising out of Plaintiff's employment relationship with Defendant.

2. Plaintiff Joseph A. Pacella ("Plaintiff Pacella" "Plaintiff," or "Pacella") is a citizen of Michigan.

3. Defendant Biosense Webster Inc. ("Defendant BWI" or "Defendant") is a citizen of California, in that it is incorporated in California, and maintains its corporate headquarters and principal place of business California.

4. The events giving rise to this cause of action occurred within the Eastern District of Michigan, where Defendant BWI conducts business.

5. The amount in controversy exceeds $75,000.

6. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1332 (diversity of citizenship).

7. Jurisdiction and venue of this matter properly lie within this Court.

## BACKGROUND FACTS

8. Plaintiff Pacella has a B.S. in Biopsychology, Cognition and Neuroscience from the University of Michigan.

9. On or about November 14, 2022, Plaintiff Pacella became employed by Defendant BWI as an Associate Clinical Account Specialist and commenced training for that position.

10. Defendant BWI is part of the Johnson & Johnson Family of Companies, and is the global leader in the science of diagnosing and treating heart rhythm disorders.

11. Throughout his employment, Plaintiff performed his job duties in a manner that was satisfactory or better.

12. Throughout his employment, Plaintiff received positive feedback regarding his performance from his various trainers.

13. Beginning December 5, 2022, which was Plaintiff's first day working for Defendant in the lab, he was subjected to explicit sexual and anti-religious (anti-Catholic and anti-Christian) comments.

14. Some of the comments were made by Plaintiff's trainer, who knew Plaintiff had attended Catholic schools and was Catholic.

15. That day, Plaintiff advised his trainer that he did not appreciate the inappropriate and discriminatory comments.

16. The comments continued.

17. On or about January 11, 2023, Plaintiff complained to his direct manager, Regional Business Director Ross Hoogenstyn, about the inappropriate and harassing sexual and anti-Christian comments.

18. Hoogenstyn advised Plaintiff that those types of comments were to be expected.

19. Following Plaintiff's complaints, Hoogenstyn abruptly stopped almost all communications with Plaintiff.

20. On February 8, 2023, Hoogenstyn berated Plaintiff in a phone call, but offered no specifics as to his issues with Plaintiff.

21. Despite Plaintiff's continuing positive feedback from his trainers, on February 28, 2023, Hoogenstyn phoned Plaintiff, stated that Plaintiff was not meeting the requirements to take an advanced exam the following week and that "HR has been notified," and then abruptly hung up on Plaintiff.

22. The sexual and anti-Christian comments continued.

23. On or about March 1, 2023, Plaintiff emailed Hoogenstyn, disputing his allegation that Plaintiff was not meeting expectations.

24. On March 3, 2023, Hoogenstyn issued Plaintiff a "Below Standards Notification," halting Plaintiff's training and containing false and trumped-up poor performance allegations, which Plaintiff refused to sign.

25. The Below Standards Notification listed purported "issues," including Pacella having requested to use the restroom or get coffee, and wearing an Apple watch.

26. On March 7, 2023, Plaintiff made a Workplace Retaliation Complaint against Hoogenstyn with HR.

27. On or about April 12, 2023, Plaintiff's new trainer advised Plaintiff that Plaintiff had met all expectations, did a great job, and would be continuing to the next level.

28. The next day, Hoogenstyn acknowledged to Plaintiff that Plaintiff had met all training expectations, but stated that Plaintiff was not meeting *his* expectations and that "HR has been notified."

29. On April 20, 2023, Defendant terminated Plaintiff.

## COUNT I

*Sexual Harassment and Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act*

30. Plaintiff incorporates the preceding paragraphs by reference.

31. At relevant times, Plaintiff Pacella was an employee and Defendant BWI was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*

32. Michigan's ELCRA prohibits sex discrimination, which includes sexual harassment.

33. Defendant, by its agents and employees, subjected Plaintiff to unwanted comments and conduct of a sexual nature, which was severe and/or pervasive, constituting a sexually hostile work environment.

34. Defendant failed to take prompt remedial action to end the harassment, exacerbating Plaintiff's hostile work environment.

35. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

36. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Pacella, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe, pension and stock benefits;

losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

*Religious Harassment and Discrimination in
Violation of Michigan's Elliott-Larsen Civil Rights Act*

37. Plaintiff incorporates the preceding paragraphs by reference.

38. Michigan's ELCRA prohibits religious discrimination, which includes religious harassment.

39. Defendant, by its agents and employees, subjected Plaintiff to unwanted anti-religious comments, which was severe and/or pervasive, constituting a hostile work environment.

40. Defendant failed to take prompt remedial action to end the harassment, exacerbating Plaintiff's hostile work environment.

41. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

42. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Pacella, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe benefits; losses with respect to

6

social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

*Retaliation in Violation of Michigan's*
*Elliott-Larsen Civil Rights Act*

43. Plaintiff incorporates the preceding paragraphs by reference.

44. Michigan's ELCRA prohibits retaliation against persons who complain about sexual harassment, and religious harassment.

45. Plaintiff engaged in activity protected by ELCRA when he complained of sexual harassment and religious harassment to his trainer, and Hoogenstyn.

46. Plaintiff's termination was retaliation for having engaged in protected activity, in violation of the anti-retaliation provisions set forth in ELCRA.

47. The actions of Defendant were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

48. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Pacella, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings

7

and earning capacity; loss of the value of fringe, pension and stock benefits; losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Pacella demands judgment against Defendant as follows:

**A. Legal Relief**

1. Compensatory damages in whatever amount he is found to be entitled;

2. Exemplary damages in whatever amount he is found to be entitled;

3. A judgment for lost wages and benefits in whatever amount he is found to be entitled;

4. An award of interest, costs and reasonable attorney fees; and

5. Whatever other legal relief appears appropriate at the time of final judgment.

**B. Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interest, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Joseph A. Pacella, by his attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Carol A. Laughbaum
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

Dated: June 26, 2023